RUFUS F. PARKS AND CLAUDE F. PARKS, TRADING
AS R. F. PARKS & SON,

*vs.*

GRIFFITH AND BOYD COMPANY, A CORPORATION.

———

GRIFFITH AND BOYD COMPANY, A CORPORATION,

*vs.*

RUFUS F. PARKS AND CLAUDE F. PARKS, TRADING
AS R. F. PARKS & SON.

*Contracts for the sale of goods: in such amounts as vendee may
require; when void; effect of accepted orders.   Assumpsit:
quantum meruit.   Evidence: objections generally.*

Accepted orders for goods, under contracts that are void be-
cause of uncertainty, may constitute valid sales of goods so
ordered, at the prices named in the contract; but such accept-
ance of the orders does not validate the agreement as to articles
which one of the parties refuses to sell and deliver, or which the
other refuses to purchase under the contract.               p. 242

For goods sold and delivered recovery may be had under the
common counts, upon the basis of a *quantum meruit.*     p. 242

Where evidence is objected to generally, the objection should
be overruled, if any part of the evidence is admissible for any
purpose whatever.                                           p. 244

Where evidence is already admitted in a case without objection, rulings as to its admissibility when offered at other times: presents no reversible error.                                    p. 244

Evidence of usage may be a pertinent element in a case of implied contracts; but where the terms of an express contract. are clear and specific, parol evidence can not be admitted to contradict or vary its terms.                                    p. 245

A contract for the future delivery of personal property is. void for the want of consideration and mutuality, if the quantity to be delivered is conditioned by the will, wish or want of one of the parties; but such a contract may be sustained if the quantity is ascertainable otherwise with reasonable certainty.

p. 246·

An accepted offer to furnish or deliver such articles of personal property as shall be needed, required or consumed by the established business of the acceptor during a limited time, is. binding and may be enforced.                                    p. 246

But an accepted offer to sell or deliver articles at specified prices during a limited time in such amounts or quantities as the acceptor may want or desire in his business, or without any statement of the amount or quantity, is without consideration and void, because the acceptor is not bound to want, desire or take any of the articles mentioned.                                    p. 246.

*Decided April 8th, 1914.* ·

Two appeals in one record from the Circuit Court for Queen Anne's County, to which the cause had been removed from Talbot County. (ADKINS and HOPPER, JJ.)

The facts are stated in the opinion of the Court and in the report of a former appeal in 117 Md. 496-497.

The following are the prayers offered in the case, and the action by the trial Court upon them: ·

*Plaintiff's First Prayer*—The Court instructs the jury that if they find certain fertilizer, three and one-half tons, or any

part thereof, was delivered by the plaintiff to the defendants, under the contract offered in evidence, if the jury shall find such contract was duly entered into, then the plaintiff is entitled to a verdict for the contract price of said fertilizer so delivered. (*Granted.*)

*Plaintiff's Second Prayer*—The Court instructs the jury that if they find for the plaintiff their verdict should be for the difference between the contract price of 596½ tons of that grade of fertilizer mentioned in the contract offered in evidence and the cost of manufacture thereof, upon which the difference between the contract price and the cost of manufacture was least, less the rebate agreed to be allowed thereon by the contract; and in addition thereto such amount as the jury may find to be due under plaintiff's first prayer, with interest on such additional amount, from December 1st, 1910, in the discretion of the jury. (*Granted.*)

*Plaintiff's Third Prayer*—If the jury shall find from the evidence that the defendants entered into the contract with the plaintiff that is recited at length in the plaintiff's declaration for the delivery of certain fertilizers manufactured by the plaintiff; and if the jury shall further believe from the evidence that the plaintiff was ready and willing to comply with the terms and conditions of the said contract of sale upon its part to be performed, and if the jury shall further believe from the evidence that the defendants upon their part ordered and received part of said fertilizers mentioned in said contract and failed, neglected and refused to order and receive part of said fertilizers mentioned in said contract of sale offered in evidence and set forth in the declaration, then their verdict should be for the plaintiff. (*Granted.*)

*Plaintiff's Fourth Prayer*—The Court instructs the jury that there is no evidence in this case that any payments were made by the defendants to the plaintiff on or before December 1st, 1910, and therefore the jury cannot consider the allowance of five per cent discount mentioned in said contract. (*Granted.*)

*Plaintiff's Fifth Prayer*—The Court instructs the jury that if they shall find the contract set forth in the declaration filed in this case was entered into between the plaintiff and defendants, and if the jury shall further find that the plaintiff agreed to allow the defendants certain rebates in consideration of the defendants pushing the sale of the plaintiff's goods, then if the jury shall find that the defendants failed to push the sale of the plaintiff's goods and that the defendants violated the terms of the contract to handle plaintiff's goods exclu- sively, and that the defendants in fact only ordered 3½ tons of fertilizers under said contract, 'then the defendants are not entitled to claim or receive any rebate as mentioned in said contract of June 17th, 1910. (*Rejected.*)

*Plaintiff's Sixth Prayer*—If the jury shall find from the evidence that the plaintiff agreed to allow as a reduction from the prices set forth in the contract recited at length in the plaintiff's declaration if the jury shall find said contract, the rebates contained in the letter June 17th, 1910, also that the prices of Martin & White would be met as to the grades or kinds of fertilizers mentioned in said letter and that said reduction were to be made in consideration of the defendants pushing the sale of the goods of the plaintiff, if the jury shall so find, and if the jury shall further find that the defendants did not push the sale of the plaintiff's goods, then the defend- ants are not entitled to said rebates or any reduction to meet the prices of Martin & White, in estimating the amount of the damages in this case. (*Rejected.*)

---

*Defendants' First Prayer*—The Court instructs the jury that there is no evidence before them legally sufficient to entitle the plaintiff to recover in this case, except for two (2) tons of special guano and one-half ton (½) of Royal Potash shipped to C. W. Rinehart or Rhinehart the freight thereon and one ton of fish bone and Potash shipped to James H.

Baker and the freight thereon and the verdict of the jury must be for the plaintiff for the contract price of said shipments amounting to $70.25 with interest thereon in their discretion, from Dec. 1st, 1910, to May 18th, 1912. (*Rejected.*)

*Defendants' Second Prayer*—If the jury believe from the evidence that the paper writing offered in evidence bearing date June 17th, 1910, was signed by Rufus F. Parks & Son, the defendants, and by Griffith & Boyd Company, the plaintiff, by its agent, T. A. Noble, if they find that T. A. Noble was the agent of the plaintiff, and that the letter offered in evidence, dated June 17th, 1910, was signed by the plaintiff, by T. A. Noble, its agent, and was attached to and made part of said paper writing, and shall further find that the plaintiff refused to meet the prices of Martin & White Company, as agreed in said contract, if they find such contract, then the jury is instructed that the plaintiff is not entitled to recover anything for the failure of the defendants to order from the plaintiff, and their verdict must be for the plaintiff for the sum of $70.25, the price of the goods, ordered and received, with interest in the discretion of the jury, from the 1st day of December, 1910. (*Granted.*)

*Defendants' Third Prayer*—If the jury believe from the evidence that the paper writing offered in evidence bearing date June 17th, 1910, was signed by Rufus F. Parks & Son, the defendants, and Griffith and Boyd Company, the plaintiff, by its agent, T. A. Noble, if they find that T. A. Noble was the agent of the plaintiff, and that the letter offered in evidence dated June 17th, 1910, was signed by the plaintiff, by the said T. A. Noble, its agent and was attached to and made part of said paper writing and shall further find that the plaintiff by the said T. A. Noble, its agent, after said paper writing and letter were executed promised to furnish a list of prices to meet the prices of Martin & White Company, and shall further find that the defendants relied upon their promise and that the plaintiff by the said T. A. Noble its

agent, told the defendants that the plaintiff would not meet the said prices of Martin & White and that the defendants relied upon said statement and declined to order any further goods, and that the plaintiff never did meet the prices of Martin & White Company, then their verdict must be for the sum of $70.25 with interest in their discretion from the 1st day of December, 1910, to the 18th day of May, 1912. (*Rejected.*)

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Urner, Stockbridge and Constable, JJ.

*R. Groome Parks* and *Lewin W. Wickes* (with whom was *J. H. C. Legg* on the brief), for Rufus F. Parks, etc.

*Hope H. Barroll* (with whom were *Thomas J. Keating* and *L. Wethered Barroll* on the brief), for Griffith and Boyd Company.

Stockbridge, J., delivered the opinion of the Court.

On May 25th, 1910, R. F. Parks & Son of Chestertown wrote a letter to Griffith & Boyd Company of Baltimore, as follows: "We are enclosing order for phosphate. Please ship promptly. Must have fall prices at once. A party in our employ wants to start at once. Advise." The receipt of the letter by the addressee was acknowledged, with the assurance that the order should have attention and then, "We note that you desire prices at once for the fall season, but owing to the unsettled condition of the chemical market we are not quite in a position to quote prices, but we will do our very best to do so within a short time. Just as soon as we can do so we will have our Mr. Noble call to see you."

On the 17th June Mr. Noble called on Parks & Son in Chestertown, and then and there presented a list of 20 fertilizers, offering to sell them at various prices ranging from $10.50 to $28 per ton. There appears to have been considerable discussion in regard to the prices, growing out of the

question as to the prices for which the same or equivalent
goods could be purchased from Martin & White Co.   But
either on that same day or upon the morning following an
acceptance of the proposition was signed by R. F. Parks &
Son.   Contemporaneously with this, or probably preceding
the signing of the contract, a letter was written to Messrs.
Parks & Son by Mr. Noble, which concludes as follows : "On
alkaline and acid goods we will meet Martin & White Co.
prices."   These various papers will be found fully set out on
the first appeal in this case, 117 Md. 496-497.

Three days later than this interview between Mr. Noble
and Mr. Claude Parks, the acting member of R. F. Parks &
Son, the following letter was written to the Griffith & Boyd
Co. by Claude Parks: "We are enclosing herewith order
which we desire to have shipped on next steamer.   Please
prepay freight.   We also want this order *to go on fall con-
tract.*   Kindly see that the goods are in a good mechanical
condition.   You will get a big tonnage from us this fall if
you will do as we were assured you would do—to impress
this on your mind we are sending you our very first order.
Please forward us at once 3 sets samples memorandum book,
etc.   Tell Mr. Noble that Fields has not shown up yet."
Accompanying this letter was an order for the shipment of
2½ tons of fertilizer, and on June 24th there was a second
order for an additional ton to be shipped to another person
than the one to whom the shipment contained in the order
of June 20th was to be made.   Beyond these two orders aggre-
gating 3½ tons no further shipments of fertilizer were
ordered by Parks & Son from the Griffith & Boyd Co.   Ac-
cordingly on the 12th December, 1910, the Griffith & Boyd
Co. instituted a suit against Rufus F. and Claude F. Parks
to recover for the goods sold and for the alleged violation of
the contract.   That suit was before this Court at the October
Term, 1911, but the record contained none of the testimony
nor the prayers, which had been offered during the trial of

the case, and the case was decided solely upon a question of pleading, the sufficiency of the declaration, and will be found reported in 117 Md., beginning at page 494.

The declaration as then filed contained the six common counts, and a seventh or special count under which it was sought to recover for the breach of the alleged contract, and a demurrer having been filed to one of the pleas, mounted up to the first error in pleading, which as was pointed out in that decision, was in the seventh or special count of the declaration, it being held that the allegation of the contract therein contained did not show a valid enforceable contract, and that if the contract was invalid it necessarily followed that there could be no breach of it for which damages were recoverable. The verdict in that case having been for $1,861.79, the judgment was reversed and the case remanded for a new trial.

After the case had been so remanded the plaintiff filed an amended declaration which contained, as did the original declaration, the six common counts and two special counts, numbered as 7 and 8. Thereupon the defendant, Parks & Son, filed the general issue plea and a demurrer to the seventh and eighth counts of the amended *narr.* These demurrers were severally sustained, whereupon the plaintiff filed a 9th count to the amended declaration, which was in like manner demurred to and the demurrer sustained. In each of these three counts, the seventh, eighth and ninth, the theory of the plaintiff was that the defendants had sold in the neighborhood of 1600 tons of fertilizer during that season, and that it was entitled to recover the difference between the cost of manufacturing such fertilizer and the contract price for 1600 tons, under the clause "You agree to handle our goods exclusively." In response to a demand for a bill of particulars an account was filed for the 3½ tons sold, which was said to be filed to each count in the declaration. After the sustaining of the demurrer to the ninth count, an amended ninth count was filed, in which the plaintiff sets forth in full the

alleged contract between the parties, consisting of the offer made on the 17th June, the acceptance of it, the accompanying letter of the same date allowing certain abatements in price on all ammoniated goods except bone meal, soft ground bone and dissolved animal bone, and a lesser discount on dissolved animal bone, together with the statement that on alkaline and acid goods the plaintiff would meet Martin & White Co. prices; also the letter of June 20th, already quoted and the accompanying order. The amended ninth count then goes on and alleges the additional order of June 24th, the refusal of the defendant to order or accept more than $3\frac{1}{2}$ tons of fertilizer, the readiness and willingness of the plaintiff to carry out his contract, that the defendant sold more than 1600 tons not made by the plaintiff, whereby the plaintiff had suffered great damages. A demurrer was also filed to this amended count, but the demurrer was overruled. This presents the case as made out by the declaration.

The contract sought to be set up by the pleadings thus far was vague and uncertain in two respects, viz., on the acid and alkaline goods, upon which the plaintiff agreed in the letter of June 17th to meet the Martin & White Co. prices, there is no allegation that these ever had been met, and the vagueness as to the amounts of fertilizer, of the different kinds to be purchased, remained as it was under the original seventh count, and so the rulings of the trial Court in sustaining the demurrers to the seventh and eighth counts of the amended declaration filed after the remand and to the ninth count as originally filed, were correct for the reasons set out by JUDGE PATTISON in the former opinion and *Wheeling Steele Co.* v. *Evans,* 97 Md. 305, and *Thomson* v. *Gortner,* 73 Md. 482, in each of which agreements as full and complete as the one in this case were held void and unenforceable. It is suggested that these cases have in effect been overruled by *Kirwan* v. *Roberts,* 99 Md. 341. But we do not so interpret that case. The agreement there was for the sale of cans of different sizes to be delivered along from time to time by

the vendor. The prices for the various sizes were different, but the deliveries were to be made monthly, in accordance with certain fixed percentages of the entire amount of the order, the vendee to designate the sizes and number, of each desired, at the commencement of the month. The contract was attacked upon the ground that, inasmuch as it did not embody the total number of each size of cans to be sold, and which the vendee was to receive, that it was therefore too vague to furnish the basis for an action for its breach. This is sometimes treated as an option, not ripening into a contract until such time as the designation is made, but there was evidence in that case tending to show that a designation and selection of sizes had been made by the bookkeeper, thus rendering certain the only element of the contract which by any possibility could theretofore have been regarded as uncertain. The present case is, therefore, rather in line with the two earlier cases cited than with the case of *Kirwan* v. *Roberts*.

With regard to the amended ninth count the situation is somewhat different. The same elements of vagueness and uncertainty remain, but there is the added element of an allegation of the sale of three and one-half tons of fertilizer under the alleged contract, and that these have not been paid for. With respect to this joinder of two matters, the appellants Parks & Son, contend that this count was thereby rendered bad upon the principle announced by JUDGE BURKE in *White Automobile Co.* v. *Dorsey*, 119 Md. 251. The distinction between that case and the present is a very plain one, the rule applicable here being that laid down by JUDGE SANBORN in *Cold Blast Trans. Co.* v. *Kansas City Bolt and Nut Co.*, 57 L. R. A. 696, that "accepted orders for goods under contracts void for their uncertainty, vagueness and lack of mutuality, may constitute sales of the goods so ordered at the prices named in the contract, but they do not validate the agreement as to articles which one of the parties to the agreement refuses to sell or deliver, or the other refuses to purchase under the void contract, because neither party is bound

to take or deliver any amount or quantity of the articles thereunder." See also, *Ashcroft* v. *Butterworth,* 136 Mass., 511; *Thayer* v. *Burchard,* 99 Mass. 508; *Hoffman* v. *Maffioli,* 104 Wis. 630; *Crane* v. *Crane & Co.,* 105 Fed. 869. Nor is this view obviated by the fact that for goods actually sold and delivered a recovery might be had under the common counts. Such a recovery would have had to be on the basis of a *quantum meruit,* while if the recovery was sought on the basis of a contract, the price named in the contract would control, and in this case the order of June 20th had expressly asked that the order "go on the fall contract." The action of the trial Court in overruling the demurrer to the amended ninth count was, therefore, proper and will be sustained.

To the amended ninth count the defendant filed two pleas, the first admitting a promise as to the sum due the plaintiff for the three and one-half tons, $70.25, and the tender to the plaintiff of $81.42; while in the second plea they endeavored to set up a usage by which under similar contracts it had been made a practice only to order and pay for such and so much goods as they might see fit. These pleas were in like manner demurred to, and the demurrer to the first plea was overruled, and that to the second sustained. The case then proceeded to trial, and at the conclusion of the evidence the plaintiff offered six prayers and the defendant three, the rulings of the Court on which constitute the first bill of exceptions.

Other exceptions were taken upon questions of evidence during the progress of the trial, but by a curious and unusual method of arrangement, these all appear at the end of the Record, and are arranged numerically to follow the action of the Court on the prayers. In order to see the applicability of the prayers it is necessary to understand something of the course of the evidence, and the exceptions relating to evidence will be considered at the points where they were severally raised in the progress of the case.

After testifying to the circumstances under which the offer of June 17th, and the letter of that date were prepared and signed, the introduction of the letter of June 20th in evidence was objected to by the defendant, and its admission is the basis of the second bill of exceptions. This letter had been included in the declaration and was a part of the plaintiff's case, certainly to the extent of showing that the goods which were ordered upon that date were ordered upon the basis of the supposed contract, and at the prices contained in the offer of June 17th. It was material, 1st, as establishing the price to be charged for the goods which had been shipped, and also upon which to make a claim of ratification of the contract by part performance. The objection to it was general, and if it was admissible for any purpose at all under such an objection, the Court was clearly right in admitting it; this is so familiar a rule of evidence that a citation of authorities in support of it is needless.

The third exception was taken to a question put to Mr. Griffith, the president of the plaintiff, whether Griffith & Boyd Co. approved the contract, to which he replied: "We did." Exactly why this question should have been objected to when it was; it is difficult to understand, as the same question had been substantially asked and answered without objection only a few moments before. The evidence was already in the case without objection, which the question sought to elicit and did elicit, and certainly under such circumstances no prejudicial error can be predicated upon this ruling of the Court.

The fourth bill of exceptions was taken to the action of the Court in permitting the same witness, Griffith, to answer the question, "Tell what orders you filled under it?" The declaration had set out the orders of June 20th and 24th, and the rules applicable alike to the sufficiency of the declaration and of this question have been considered in discussing the demurrer, and from what was then said it will be apparent that there was no error committed by the Court in its ruling upon this.

The fifth and sixth bills of exception both involve the same question, namely, whether it was competent for the defendant to prove upon cross-examination of the plaintiff's president a usage or custom of the business, in accordance with which, under contracts similar to that in this case, the purchaser is only expected to buy what he sees fit. Evidence of usage may be and frequently is a pertinent element in cases arising on implied contracts. Where, however, the terms of an express contract are clear and specific, parol evidence can never be admitted to contradict or vary those terms, and the only possible effect that the evidence here sought to be introduced could have had, would have been to vary the express terms of the instrument or paper supposed to constitute a contract which had been offered in evidence. These exceptions cannot be sustained.

On June 24th or 27th Mr. Noble returned to Chestertown for the purpose of ascertaining what the Martin & White Co. prices were, but was unable to obtain from the Parks the desired information, so that he might conform to the undertaking in the letter of June 17th to meet those prices. Not getting the information on this visit he returned a third time to Chestertown, between the 24th and 27th July. On the occasion of this visit he saw a Martin & White Co. contract in the hands of Claude F. Parks, and the latter occupied in erasing and altering some of the figures contained in that contract. Why Mr. Parks did this it is difficult to understand, that he did do it is not denied, but whatever the reason may have been, Mr. Noble declined to accept the altered figures of Parks. He did, however, obtain the prices in the contract from Mr. Barton, the salesman for the Martin & White Co. On July 30th the Griffith & Boyd Co. wrote to Parks & Son, as follows: "We hereby accept contract made with you for the fall season by our Mr. Noble, dated June 17th, 1910, and will allow you the following rebates on alkaline and acid goods to conform with the Martin & White Co. prices as per agreement." Then follows a list of rebates on eight different

brands of fertilizers, rebates ranging from 60c. to $1.55 per ton; thus for the first time making certain the prices upon all of the goods mentioned in the offer of June 17th. The receipt of this letter was first denied by Mr. Parks, Sr., but admitted upon being confronted with the letter.

No evidence, however, was offered to show that at any time was there any attempt to designate the number of tons of each or any of the brands named in the offer of June 17th, other than in the case of the three and one-half tons ordered upon June 20th and 24th.

In considering the prayers no better or clearer guide can be followed than the rules laid down by JUDGE SANBORN in the case of the *Cold Blast Trans. Co.* v. *Kansas Bolt & Nut Co., supra,* and which are the same rules that were applied by JUDGE McSHERRY in the case of the *Wheeling Steel Co.* v. *Evans, supra*: "A contract for the future delivery of personal property is void, for want of consideration and mutuality, if the quantity to be delivered is conditioned by the will, wish or want of one of the parties; but it may be sustained if the quantity is ascertainable otherwise with reasonable certainty. An accepted offer to furnish or deliver such articles of personal property as shall be needed, required or consumed by the established business of the acceptor during a limited time is binding, and may be enforced, because it contains the implied agreement of the acceptor to purchase all the articles that shall be required in conducting his business during this time from the party who makes the offer * * *. But an accepted offer to sell or deliver articles at specified prices during a limited time in such amounts or quantities as the acceptor may want or desire in his business, or without any statement of the amount or quantity, is without consideration and void, because the acceptor is not bound to want, desire, or take any of the articles mentioned."

The first prayer of the plaintiff, which was granted by the Court had relation only to the three and one-half tons which

had been delivered, and from what has been said already, the granting of this prayer was entirely proper.

The second and third prayers, as they appear in the Record, are in inverted order. The third prayer is in these words: "If the jury shall find from the evidence that the defendants entered into the contract with the plaintiff that is recited at length in the plaintiff's declaration for the delivery of certain fertilizers manufactured by the plaintiff; and if the jury shall further believe from the evidence that the plaintiff was ready and willing to comply with the terms and conditions of the said contract of sale upon its part to be performed, and if the jury shall further believe from the evidence that the defendants upon their part ordered and received part of said fertilizers mentioned in said contract and failed, neglected and refused to order and receive part of said fertilizers mentioned in said contract of sale offered in evidence and set forth in the declaration, then their verdict should be for the plaintiff." This was granted. It assumes the sufficiency of the papers set out in the pleadings and evidence as constituting a valid contract, if their genuineness was found by the jury. For the reasons stated this was erroneous, and the prayer should have been rejected. The plaintiff's second prayer was upon the measure of damages, and these were upon the theory contained in the plaintiff's third prayer. Since it was error to have granted that, it was likewise error to have granted the second prayer.

The plaintiff's fourth prayer was on the question of discounts and was correct. The plaintiff's fifth and sixth prayers were both based upon the theory of the validity of the contract, and were properly rejected.

By the defendant's first prayer, the right of recovery by the plaintiffs was conceded to the amount of $70.25, with interest in the "discretion of the jury from December 1st, 1910, to May 18th, 1912." This excluded the element of damages for a breach of the so-called contract from the consideration of the jury, and was correct in principle and should

not have been wholly rejected. Just why the jury should have been limited on the matter of interest to May 18th, 1912, is not clear, but the error was one which could have been readily corrected by the Court.

The second and third prayers of the defendants were both based upon the same line of defense, namely, the theory of a refusal of Griffith, Boyd & Co. to meet the prices of the Martin & White Co. Mr. Claude F. Parks did testify to such a refusal, notwithstanding the letter of the plaintiff of July 30th; and as the first prayer of the defendants had at that time been rejected by the trial Court, they were entitled to have the verdict of the jury upon this defense. Of the two prayers the second was less open to criticism than the third, and no reversible error can be ascribed to the Court for its ruling on these two prayers.

What has been said sufficiently disposes of both the appeals contained in this record, and the judgment appealed from will be reversed, and the cause remanded for a new trial, or such further proceedings as may be appropriate.

*Judgment reversed and cause remanded, the costs in both appeals to be paid by the Griffith & Boyd Co.*