## TIDEWATER OIL COMPANY vs. JACOB SPOERER et al.

*Contract of Sale—Breach by Vendor—Damages—Instructions—Assumption of Fact.*

In an action for breach by defendant of a contract for the sale of carloads of oil, to be delivered in monthly quantities as designated by plaintiff vendees, by which contract such vendees were given a discount of twenty per cent. on the average reselling price of each carload delivered and resold, as their "gross margin of profit," an award of damages, on account of the non-delivery of the oil, upon the basis of such twenty per cent. gross margin of profit, without deducting expenses necessarily incurred by plaintiffs in making resales, was erroneous.

pp. 154-156

One injured by the breach of a contract, or the commission of a tort, is in no case entitled to be placed in a better position than he would be in had the wrong not been done, or the contract not been broken.                    p. 154

Defendant contending that there was no such contract of sale as plaintiffs alleged, and that it was liable only as regards individual orders specifically given and accepted, and accordingly requesting an instruction that plaintiffs could recover only such damages as the jury might find that they suffered by reason of defendant's failure or refusal to deliver goods "on orders given by the plaintiffs and accepted by the defendant," such damages to be subject to a set-off of what might be due plaintiffs for goods sold and delivered, it was error, in granting the instruction, to strike out, against defendant's objection, the quoted words, the instruction being thus converted into one relating solely to damages, and as such leaving the measure of damages wholly undefined, and there being no other instruction by which that fault was corrected.                    pp. 155-156

The instruction, as granted, was also defective in assuming plaintiff's right to recover for defendant's failure or refusal to deliver goods to plaintiffs, it thus disregarding the vital issue

of whether the parties actually entered into the contract upon which recovery depended, as to which the evidence was conflicting.                                                    p. 157

An instruction that the jury, in determining what were "the terms of the contract between the plaintiffs and defendant," may consider their course of dealings as disclosed by the testimony as far as the same tend to show what was the nature of "the agreement made," was erroneous as assuming the existence of "the contract" and "the agreement made," while this was in fact the primary issue to be decided.           p. 157

The defendant having supplied plaintiffs with forms of contracts for use by them in their resales of oil, and having otherwise pursued a course of conduct from which the jury could infer a recognition of the existence of the verbal agreement of sale relied on by plaintiffs, *held* that the conditions testified to admitted of the inference that the agreement was intended to be effective, although no written agreement was signed, as was originally proposed.                              p. 158

There being no uncertainty as to the quantity and uniform price of the oil to be delivered under the disputed contract, and the previous and continued course of dealing of the parties, in connection with other evidence, tending to support the averment of the declaration that the shipments were to be made upon monthly specifications by plaintiffs as to kind and quantity, *held* that the evidence adduced by plaintiff had a legal tendency to prove the existence of an agreement sufficiently certain in its terms to support the action.        pp. 159, 160

*Decided February 13th, 1924.*

Appeal from the Superior Court of Baltimore City (DAWKINS, J.).

Action by Jacob Spoerer and Charles Spoerer, co-partners, trading as Charles Spoerer's Sons, against the Tidewater Oil Company. From a judgment for plaintiffs, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and ADKINS, JJ.

*Samuel K. Dennis,* with whom were *Frank Gosnell* and *Lord & Whip,* for the appellant.

*J. Purdon Wright,* submitting on brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The declaration in this case alleges that the plaintiffs, on December 11, 1919, entered into a verbal contract with the duly authorized agents of the defendant corporation, whereby the defendant agreed to sell to the plaintiffs sixty-five carloads of oils, known as "Veedol" products, during 1920, at prices for which their expired contract in writing for a portion of the preceding year had provided, the shipments to be in monthly quantities to be designated by the plaintiffs according to the requirements of their business, and that the defendant, in violation of the agreement, has failed and refused to ship more than three of the sixty-five carloads contracted for, and that the plaintiffs, having expended large sums in advertising and procuring orders for "Veedol" products and being unable to fill the orders, and being deprived of the profits which would have resulted from the resale of the undelivered carloads, have sustained great loss and damage, for which compensation is claimed to the amount of $25,000.

The suit is resisted on the ground that the defendant never entered into the alleged verbal contract, and that, upon the plaintiffs' own proof, it lacked the essential elements of mutuality and certainty. In connection with that defense a plea was filed which proposed to set-off against the plaintiffs' claim their indebtedness to the defendant, admitted at the trial to be $4,529.18, on account of "Veedol" products ordered and delivered.

There was proof that the plaintiffs received four carloads of the oils from the defendant during the period of the alleged contract, and that under the terms of the prior agreement to which it was said to refer the plaintiffs would be entitled to a discount of twenty per cent., amounting to $434, on the average reselling price of each carload delivered and resold, as their "gross margin of profit." This was the as-

serted loss which the plaintiffs sought to recover. The trial resulted in a verdict of $21,944.82 for the plaintiffs, which evidently and concededly was reached by the allowance of $434 of lost gross profit on each of sixty-one carloads of oil not delivered, making a total of $26,474 damages thus ascertained, and by the deduction from that amount of the defendant's admitted counter-claim of $4,529.18.

The award of damages upon the basis of the twenty per cent. gross margin of profit on resales left out of consideration the fact, apparent from the undisputed proof, that in making the resales of the carloads not received the plaintiffs would have been subjected to considerable expense. Their gross profits would have been reduced by commissions to salesmen and other charges. The amount or scale of those expenses is not shown by the evidence, but the fact that they would have been incurred is definitely proved. If the sixty-five carloads of oil which the plaintiffs claim to have purchased from the defendant had been regularly shipped and resold, their profits would have been substantially less than the amount of the twenty per cent. discount for which the contract is said to have made provision. The discount was simply an abatement of the purchase price. It was a deduction in favor of the plaintiffs, as distributors, from the list price which they were primarily charged and for which they were to resell the oil. It could only represent a profit to the extent to which it exceeded the cost of making the resales. The damages recoverable for the breach of the contract should be measured by the "loss directly and naturally resulting, in the ordinary course of events," from the breach (Uniform Sales Act, sec. 67; Code, art. 83, sec. 88), but the amount of that loss could not be justly estimated as equivalent to a nominal profit which the expense of the resales would inevitably and appreciably reduce.

In regard to the rule as to compensatory damages, it is said in 8 R. C. L. 434: "Since one who has been injured by the breach of a contract or the commission of a tort is entitled to just and adequate compensation for such injury and no more, it follows that his recovery must be limited to

a fair compensation and indemnity for his injury and loss. And in no case should the injured party be placed in a better position than he would be in had the wrong not been done, or the contract not been broken."

When this suit was brought, only a few months of the contract year had expired, and yet the plaintiffs were awarded as damages the full amount of the specified discount on the resale price of defaulted shipments for the entire year, notwithstanding the fact that they were relieved of the resale expenses which they would necessarily have incurred if the contract had been duly performed. The stipulated discount was, therefore, not the proper measure of the loss sustained by the plaintiffs as the result of the defendant's failure to make the deliveries of oil to which they claim to have been entitled. Consequently, the damages awarded by the verdict were calculated upon an erroneous theory, and were in excess of any loss which the plaintiffs appear to have suffered. Whether that result was promoted by any of the rulings to which exceptions were reserved is a question yet to be considered.

In support of the defendant's contention that there was no such contract as the declaration alleged, and that it was liable only with respect to individual orders specifically given and accepted, an instruction was requested to the effect that the plaintiffs could recover only such damages, if any, as the jury might find they suffered by reason of the failure or refusal of the defendant to deliver goods "on orders given by the plaintiffs and accepted by the defendant," and that as against such damages could be set off such sum as the plaintiffs might be found to owe the defendant for goods sold and delivered to them and for which they had not paid. This prayer was refused as offered, but was granted after the court had stricken out the words "on orders given by the plaintiffs and accepted by the defendant," the effect of this change being to authorize the jury to award the plaintiffs such damages as they might be found to have sustained by reason of the defendant's failure to deliver goods to them, after deducting the amount of the defendant's counter-claim. As thus modi-

fied, the instruction was converted from one purporting to define and restrict the right of recovery to one relating solely to the subject of damages. In submitting that question the altered instruction left the measure of damages wholly undefined. No reasonable complaint of that omission could be made by the defendant if its prayer had been so framed when offered. But it was changed to a damage prayer by an act of the court to which the defendant objected. The omission of the instruction, after its modification, to define the measure of recoverable damages, is, therefore, a defect of which the defendant is entitled to complain, if there was any resulting injury to its interest. The instruction had a tendency to prejudice the defendant by expressly and generally permitting the recovery of damages without giving the jury any information as to the proper basis of their award. *Bernstein* v. *Merkel,* 126 Md. 459. There was no other instruction by which that fault was corrected. In the absence of such a direction, the jury felt at liberty to base their verdict upon the inaccurate measure of damages which they adopted.

In view of the alleged contractual provision for a twenty per cent. discount on resale prices as a "gross margin of profit" on the plaintiffs' sales of the defendant's products, it is proper that damages for a breach of the contract by the defendant should be estimated upon the basis of the loss of profits resulting from the breach. But as the contract distinctly regarded the discount as representing only the gross profit, and as the evidence shows that salesmen's commissions and other expenses of resale would have reduced the profits below the stated discount percentage, the real extent of the plaintiffs' loss would be the amount of the "gross margin of profit" less the cost of the resales which the contract contemplated and with reference to which the discount was allowed.

There was evidence that, after the breach of contract for which the plaintiffs are suing, they made "arrangements" with another oil company in pursuance of which they "handled that line about six months" of the remaining period of the year to which the contract with the defendant is said to

have applied. The record does not enable us to determine whether the conditions were such as to justly require that any profits earned in the new undertaking should reduce the damages claimed in this suit.

The prayer to which we have referred has another serious defect as modified. It assumes the plaintiffs' right to recover generally for "the failure or refusal of the defendant to deliver goods to the plaintiffs," and disregards the vital issue as to whether the parties actually entered into the verbal contract upon which recovery depends. As proposed by the defendant the instruction would in effect have directed a finding against the plaintiffs on that issue. But in that respect the instruction was radically changed by the court's action. There was evidence from which the jury might have found that the parties did not reach a definite agreement for the continuance of their trade relations during another year. Unless the jury should find the existence of such a contract, the plaintiffs could not recover under the pleadings. The defendant was entitled to have that issue duly regarded by any instruction upon which the right of recovery might be predicated.

The first prayer of the plaintiffs was granted, after being modified, in the following form: "The jury are instructed that in determining what were the terms of the contract between the plaintiffs and the defendant in this case they may consider their course of dealings as disclosed by the testimony as far as the same tend to show what was the nature of the agreement made." By this instruction the existence of "the contract" and "the agreement made" is assumed. But the question whether it in fact existed was the primary issue to be decided. Two of the defendant's prayers sought to have the case withdrawn from the jury on the ground that there was no legally sufficient evidence upon which the plaintiffs could recover. These prayers were rightfully refused because of evidence to which we shall presently refer. But the controverted fact upon which the suit was dependent should not have been assumed in the instruction we have quoted.

It was testified on behalf of the plaintiffs that on December 11th, 1919, the defendant's representatives verbally agreed to sell them sixty-five carloads of oil during the next year, for resale within a designated area, upon the basis of the price of ninety-three cents per gallon, which had been specified under their agreement for a part of the preceding year, but which was to be advanced to one dollar and five cents per gallon on January 1, 1920. The intention of both parties was that their new agreement should be expressed on a printed contract form to be prepared and signed, but when it was subsequently presented to the plaintiffs they refused to sign it because it contained no reference to the territory in which they were to have, as they claim, the exclusive sales privilege. Nevertheless the defendant supplied the plaintiffs with forms of contracts for use by them in their transactions with dealers to whom resales of the oil would be made, and in other respects the defendant pursued a course of conduct from which the jury could infer a recognition of the existence of the agreement upon which the plaintiffs rely. In a letter from the defendant to the plaintiffs, dated January 10, 1920, in which reference was made to certain dealers to whom the plaintiffs had sold the defendant's products during the previous year, there was the following allusion to the new contract: "We trust you will succeed in signing up all of these dealers and many additional new ones under the new agreement, and thus place yourself in a better position to retain their business, and to develop them into valuable Veedol accounts." The conditions testified to were such as to admit of the inference that the agreement was intended to be effective although the anticipated written and printed statement of its terms was not signed. If the parties definitely entered into the verbal agreement alleged, its binding effect would not be impaired by the mere fact that it was not given the more formal expression originally proposed. *Wills* v. *Carpenter,* 75 Md. 80. There is testimony that the defendant insisted upon the plaintiffs agreeing to take sixty-five carloads of oil during 1920 as a condi-

tion to the continuance of their contractual relations. Fifteen carloads of the oil had been ordered and four had been delivered, the last one about the first of April, 1920, and the plaintiffs had offered to give shipping instructions for the remaining carloads to be delivered during the year, when the defendant concluded to discontinue the shipments. The reason for this decision apparently was the belief that some of the carloads had been ordered by the plaintiffs before the price advances referred to, contrary to the defendant's stipulation that the oil should not be bought at the lower price for speculative purposes, but only to meet the existing needs of the plaintiffs' trade.

There was no uncertainty as to the quantity and uniform price of the oil to be delivered under the disputed contract, though different grades of the product, at the same price, might be ordered, and the previous and continued course of dealing of the parties as to orders and deliveries, in connection with other evidence, tends to support the averment of the declaration that the shipments were to be made upon monthly specifications of kind and quantity by the plaintiffs according to their business requirements. The proffer by the plaintiffs to specify the monthly deliveries for the remainder of the year appears to have been made before the shipments were discontniued. In our opinion the evidence adduced by the plaintiffs had a legal tendency to prove the existence of an agreement sufficiently certain in its terms to support the present action. This conclusion is in accord with the principle applied in *Kirwan* v. *Roberts,* 99 Md. 341, where a contract for the sale and delivery of a stated number of cans during a certain season was held to be effective, though it was subject to further specifications by the purchaser as to the style of the cans to be delivered each month.

In *Parks* v. *Griffith & Boyd Co.,* 123 Md. 233, 117 Md. 494, specially cited in support of the defendant's theory, it was held that there was no definite agreement to order any of the various grades of fertilizer listed, at different prices, in the offer there under consideration. Analogous conditions

were found to exist in *Wheeling Iron & Steel Co.* v. *Evans,* 97 Md. 305.

The case of *Rawlings* v. *Nash,* 117 Md. 393, was cited by the defendant in support of the proposition that, as the alleged agreement related to a purchase for the purpose of resale, the plaintiffs could recover only for default in deliveries which were required to meet resale orders actually received and proved. The claim in that case was for damages on account of the refusal of the vendor to deliver goods in excess of the quantities which the contract specified. In the present case the agreement is said to have designated, and to have obligated the plaintiffs to receive, the quantities of defendant's oil to which the claim of damages refers.

The views we have expressed are sufficient to indicate our conclusion that the court below properly refused the instructions requested by the defendant which would have prevented recovery, or limited its scope to damages resulting from the failure to deliver oil specified in orders currently given by the plaintiffs and accepted by the defendant, or required to fill orders received by the plaintiffs from their customers.

There are twenty-nine exceptions to rulings on the admissibility of evidence. Eleven of these are not pressed. They are the first, second, seventh, eighth, ninth, tenth, eleventh, twelfth, twenty-third, twenty-fourth, and twenty-fifth.

The third fourth, fifth, sixth, twenty-second and twenty-sixth exceptions relate to conversations in which the verbal agreement in question is said to have been discussed and concluded. Exceptions numbered thirteen, twenty-seven and twenty-eight refers to interferences by the defendant with the plaintiffs' asserted territorial rights for the sale of the defendant's products. Acts of the parties in pursuance and recognition of the agreement mentioned in the evidence are the subjects of the fourteenth, fifteenth, twentieth and twenty-first exceptions. The sixteenth, seventeenth, eighteenth and nineteenth exceptions were taken because of the admission of evidence relating to orders which are alleged in the declaration and proof to have been given and accepted under the

agreement in dispute. The rulings on these various exceptions were free of error. While the question disallowed contrary to the twenty-ninth exception might properly have been permitted, yet in view of the preceding testimony of the witness to whom it was propounded we find no reversible error in the ruling.

There was a demurrer to the declaration, but we need not separately discuss the question thereby raised, as our view that a sufficient cause of action has been stated is disclosed and explained by what we have said in disposing of the exceptions to the other rulings under review.

> *Judgment reversed with costs, and new trial awarded.*