[Civ. No. 17280. Second Dist., Div. Two. Dec. 20, 1949.]

EL RIO OILS (CANADA) LIMITED (a Delaware Corporation), Plaintiff and Appellant, v. PACIFIC COAST ASPHALT CO., INC (a Corporation), Defendant and Appellant; RALPH EDGINGTON, Intervener and Respondent.

188

William A. Reppy and Dolley, Knight, Woods & Hightower for Plaintiff and Appellant.

Durley Todd, Fox, Churchill, Teague & Romney and E. Perry Churchill for Defendant and Appellant.

Don R. Holt and Caryl Warner for Intervener and Respondent.

McCOMB, J.—Plaintiff appeals from (1) a judgment denying dissolution of a corporation, and (2) a judgment on the cross-complaint decreeing specific performance of a con-

tract to sell oil and awarding defendant damages for breach of said contract in the amount of $138,299.43.

Defendant appeals from a judgment in favor of the intervener predicated upon defendant's breach of contract in the amount of $48,181.14.

## FACTS

Viewing the record pursuant to the rules set forth in *Estate of Isenberg*, 63 Cal.App.2d 214, 217 [146 P.2d 424], and bearing in mind that an appellate court will not consider matters not appearing in the record (*People* v. *O'Neill*, 78 Cal.App.2d 888, 892 [179 P.2d 10]), the evidence discloses:

In 1937, plaintiff drilled an oil well on leased land. In 1938, with the permission of lessor, a refinery was constructed on the leased premises in which refinery plaintiff owned an interest. The purpose of the refinery was to refine and manufacture asphalt from the oil produced by plaintiff. This venture was a failure and in 1939 plaintiff was on the verge of bankruptcy and sought the assistance of the lessors (the Chases) of the land upon which it had drilled an oil well.

As a result of various negotiations plaintiff and the Chases entered into an agreement for the formation of defendant corporation. Plaintiff and the Chases were to have an equal stock ownership in defendant and each was to provide an equal share of the capital to successfully operate defendant. The Chases were to devote their time and attention to the management of defendant and plaintiff agreed to furnish for the life of the wells all oil produced on the leased premises to the extent that such oil could be used by defendant in the production and sale of asphalt and other products. It was agreed that plaintiff would not sell its oil to anyone other than defendant but that defendant could sell any oil in excess of its own requirements which plaintiff produced.

Pursuant to the agreement defendant corporation was organized and stock issued in equal amounts to plaintiff and the Chases. After defendant corporation was formed the Chases took over the active management of the company. Plaintiff did not furnish its share of the financial assets necessary for the operation of the company. Defendant company did not prosper and early in 1940, plaintiff and defendant mutually agreed to modify their original contract as to the method of fixing the price of oil sold by plaintiff to defendant. In effect it was agreed that defendant would continue its efforts to develop a market for the oil produced by plaintiff and that plaintiff would accept for the oil the price which defendant was able

to pay and continue in operation. In 1943, when defendant's operations became successful this arrangement was terminated and the provisions in the original contract were resumed, to wit, that defendant should pay plaintiff the current market price for the oil purchased.

In May, 1944, plaintiff and defendant agreed to another modification of their original contract by providing that plaintiff should have the right to sell to anyone the oil produced by it over and beyond the requirements of defendant. As thus modified both parties continued to operate according to the agreement through the year 1945.

In 1947, defendant entered into a contract with intervener to sell all of the asphalt produced from the oil located on plaintiff's lease during the year 1947, and intervener agreed to buy the same. Plaintiff had notice of this contract. Plaintiff continued to perform its agreement with defendant until on or about April 7, 1947, on which date it refused to deliver to defendant oil produced from its wells, and thereafter refused to deliver any oil to defendant. On April 7, 1947, plaintiff filed a complaint seeking the dissolution of defendant corporation on the ground that internal dissension existed between the stockholders of defendant corporation and that its business could no longer be continued with advantage or profit to the stockholders.

Defendant filed a cross-complaint against plaintiff seeking (1) specific performance of its contract with plaintiff, and (2) damages for breach of the contract. Thereafter intervener filed a complaint in intervention seeking damages against defendant for breach of its contract with him.

### FINDINGS

The trial court found that:

1. It was not true that there was such internal dissension between the stockholders of defendant that its affairs could not be conducted with advantage or profit to the stockholders, but that the sole motive of plaintiff in filing the suit for dissolution of defendant corporation was to avoid its contractual obligation to deliver all the oil produced on its lease to defendant.

2. Plaintiff had entered into an agreement to deliver all the oil produced on its lease to defendant.

3. Defendant had entered into an agreement with intervener to sell all the asphalt produced from the oil furnished

by plaintiff to the intervener who had in turn agreed to purchase all of said asphalt.

## JUDGMENT

The trial court entered judgment (1) decreeing specific performance of the contract between plaintiff and defendant, (2) awarding defendant damages against plaintiff for the breach of its contract, and (3) awarding intervener damages against defendant for breach of its contract with intervener.

## PLAINTIFF'S APPEAL

*Contentions of Plaintiff:* First: *That there is no credible evidence to support the finding that plaintiff entered into a contract in July, 1939, for the sale of its oil to defendant for the life of plaintiff's wells.*

It is the established rule that courts of appeal will not pass upon the *credibility* of evidence. Where, as in the instant case, there is substantial evidence to support the findings, a reviewing court will not look further into the evidence. (\*Code Civ. Proc., § 1847; *Joerger* v. *Pacific Gas & Electric Co.,* 207 Cal. 8, 24 [276 P. 1017]; *Bealmer* v. *Smith,* 91 Cal.App.2d 179, 180 [204 P.2d 642].)

In the instant case it is conceded that Glywn S. Chase and J. Warren Chase gave testimony which would sustain the questioned finding. We must assume that the trial court believed this testimony and resolved any conflicts therein in favor of defendant.

Second: *That the contract which plaintiff made for the sale of its oil was made with the Chase brothers personally and was not enforceable by defendant.*

This proposition is untenable. The record discloses, and the trial court found, that the agreement which plaintiff made with the Chase brothers for the sale of its oil during the life of the wells on its lease contemplated the formation of defendant corporation and was for the benefit of the corporation. In other words it was a preorganization agreement made for the benefit of the corporation and hence enforceable by defendant after its organization as a corporation. (See *Central Heights etc. Co.* v. *Memorial Parks,* 40 Cal.App.2d 591, 607 [105 P.2d 596].)

---

\*Section 1847, Code of Civil Procedure, reads: "A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence; and *the jury are the exclusive judges of his credibility.*" (Italics added.)

In the present case the evidence discloses that defendant after its formation as a corporation adopted and ratified the contract, relied upon the agreement, and in all particulars performed the obligation imposed upon it by such agreement.

 Third: *That there is no evidence of the authority of plaintiff's agents to enter into the contract with defendant.*

This proposition is without merit. Mr. Roberts and Mr. Von Bohm, who were in turn managing directors of plaintiff, each testified that they were the agents of plaintiff with power to handle the affairs of such corporation. Such testimony was clearly admissible under the rule that when the question of the existence of an agency is involved, the testimony of the agent is competent to establish the fact of agency and the extent thereof. (*Kast* v. *Miller & Lux,* 159 Cal. 723, 728 [115 P. 932].)

 Fourth: *That the contract between plaintiff and defendant was not enforceable because of a lack of mutuality.*

This proposition is likewise without merit. In consideration of plaintiff's promise to sell all its oil to defendant, defendant promised and agreed to take its entire requirements of oil from plaintiff and to use its best efforts to develop a market for the oil produced by plaintiff. Mutual promises constitute consideration. (*Gallagher* v. *Equitable Gas Light Co.,* 141 Cal. 699, 707 [75 P. 329].) A promise to buy all that the promisor requires or needs in its business from the promisee constitutes a valid consideration for the vendor's promise to furnish the goods or merchandise which the promisor may need. (*Marin Water etc. Co.* v. *Town of Sausalito,* 168 Cal. 587, 600 [143 P. 767]; *Bartlett S. Co.* v. *Standard Box Co.,* 16 Cal.App. 671, 672 [117 P. 934]. See, also, *Cooper* v. *Lansing Wheel Co.,* 94 Mich. 272 [54 N.W. 39, 40, 34 Am. St.Rep. 341]; *Parks* v. *Griffith & Boyd Co.,* 123 Md. 233 [91 A. 581, 585]; Williston on Contracts, vol. I (rev. ed.), § 104-A et seq., p. 353; *cf., Webber* v. *Johnston,* 214 Cal. 378, 381 et seq. [5 P.2d 886].)

*California R. Co.* v. *Producers R. Corp.,* 25 Cal.App.2d 104 [76 P.2d 553], is not here in point for the reason that in the cited case there was no agreement to sell and purchase all the requirements needed in the business; neither was there an agreement to develop a market for the vendor's product. *Garrison* v. *Edward Brown & Sons,* 25 Cal.2d 473 [154 P.2d 377], is not applicable since the holding of the case was simply that in the absence of an express agreement for the modifica-

tion of a prior agreement there must be facts from which the court could infer or imply a modification of the original agreement.

▮ Fifth: *That the contract between the parties not being in writing was not enforceable under the provisions of section 1624, subdivision 1, of the Civil Code, which provides that in the absence of some note or memorandum in writing subscribed by the party or his agent, an agreement that by its terms is not to be performed within a year of the making thereof is invalid.*

This proposition is also untenable. ▮ A contract is invalid under subdivision 1, section 1624 of the Civil Code only where by its *very terms* it cannot be performed within a year from the date it is made. (*McKeany* v. *Black*, 117 Cal. 587, 592 [49 P. 710]; *Hopper* v. *Lennen & Mitchell*, 146 F.2d 364. See, also, *Hagan* v. *McNary*, 170 Cal. 141, 143 [148 P. 937, L.R.A. 1915E 562].)

The fact that it is not probable or likely to be performed within a year from the date it is made does not make it invalid if by its terms it is possible that the contract may be performed within a year after it is made. (See *Hopper* v. *Lennen & Mitchell, supra.*)

▮ In the present case there was nothing in the terms of the contract that prevented it from being performed within a year from the date of the agreement. It was possible that during the year plaintiff's wells might have been pumped dry or for some other reason, due to earth movements or mechanical difficulties, it would be no longer feasible to produce from them.

▮ Sixth: *That defendant was estopped from claiming plaintiff was not excused from performing its contract during the time involved in the present action.*

This proposition is likewise devoid of merit. The essence of the doctrine of estoppel is that one party has by false or fraudulent language or conduct led another to do that which he would not have otherwise done with the result that he has suffered injury. (*Seymour* v. *Oelrichs*, 156 Cal. 782, 795 [106 P. 88, 134 Am.St.Rep. 154].)

In the instant case there is a total absence of any evidence that defendant made any fraudulent or false representations to plaintiff upon which plaintiff acted to its detriment.

▮ Seventh: *That the trial court should not have ordered specific performance between plaintiff and defendant.*

This proposition is also devoid of merit. The terms of the

contract between plaintiff and defendant as found by the trial court and supported by substantial evidence are definite and specific. In addition it found that defendant's refinery was designed to refine the oil from plaintiff's wells which was of a heavy gravity and high sulphur content; that the refinery was located on premises close to the wells and connected by direct pipe line with them; and that if in the future another source of oil should be available to defendant it would be put to great expense and inconvenience in order to obtain and use such oil. Under such facts the trial court was justified in requiring specific performance. (See *Southwest Pipe Line Co. v. Empire Natural Gas Co.*, (Okla.) 33 F.2d 248 [64 A.L.R. 1229]; *Hall v. Philadelphia Co.*, 72 W.Va. 573 [78 S.E. 755]; *Chas. F. Noble Oil & Gas Co. v. Altex Petroleum Co.*, (Tex.Civ.App.) 230 S.W. 758.)

■ Eighth: *That the trial court did not correctly assess the damages.*

This proposition is likewise without merit. The proper measure of damage was the loss of profits suffered by defendant. (*National Oil etc. Co. v. Producers' Refining Co.*, 169 Cal. 740 [147 P. 963].) The evidence of defendant's loss is contained in numerous exhibits and testimony found in the record, which evidence was not contradicted by any evidence produced by plaintiff. Since this evidence is substantial and sustains the trial court's finding, no useful purpose would be served by setting it forth in extenso.

■ Ninth: *That plaintiff was entitled to a decree dissolving defendant corporation.*

This proposition is totally devoid of merit in view of the fact that the trial court found, supported by substantial evidence, that none of the grounds for the involuntary dissolution of a California corporation as set forth in section 4651 of the Corporations Code existed, but that, on the contrary, plaintiff brought the action solely for the purpose of avoiding its contractual obligation to defendant.

■ Tenth: *That the trial court erred in denying plaintiff's motion for a new trial on the ground of newly discovered evidence.*

This proposition is without merit. The law is settled in California that before a motion for a new trial will be granted on the ground of newly discovered evidence the moving party must show to the satisfaction of the court that he has exercised reasonable diligence in endeavoring to discover and pro-

duce such evidence at the original trial. (*Estate of Hunt,* 33 Cal.App.2d 358, 361 [91 P.2d 609].)

In the present case plaintiff has failed to meet this requirement. There is a total absence of any showing that he could not have produced at the trial the witnesses he now relies upon.

## DEFENDANT'S APPEAL

█ *Contentions of Defendant:* First: *That the findings upon which the judgment in favor of intervener are predicated are not supported by any credible evidence.*

This proposition will not be considered by us for the reasons given above in answering the first contention of plaintiff on its appeal.

█ Second: *That it was error to permit the intervener to file a complaint in intervention.*

This proposition is untenable.

(a) The law is settled that, in the absence of an objection in the trial court to an order permitting the filing of a complaint in intervention, a party may not urge error in the making of such order for the first time on appeal. (*Bloom* v. *Waxman,* 48 Cal.App.2d 646, 647 [120 P.2d 509].)

In the present case the record discloses that defendant did not object to the intervention in the trial court. Therefore defendant may not raise the objection for the first time on this appeal.

█ (b) Plaintiff made a motion solely on its own behalf to dismiss the complaint in intervention which was denied. This order was proper in view of the fact that plaintiff had requested that intervener enter the case. Therefore under the doctrine of invited error, that is, that a party cannot take advantage of error committed at his request, plaintiff is not in a position to urge that the trial court erred in permitting the intervention. (*Jentick* v. *Pacific Gas & Electric Co.,* 18 Cal.2d 117, 121 [114 P.2d 343].)

Third: *That the trial court erred in giving judgment in favor of intervener because the contract with intervener was (a) conditional, (b) rendered impossible of performance by reason of the fact that plaintiff did not deliver the oil to defendant, and (c) unenforceable on the theory of frustration.*

This proposition is likewise untenable.

█ (a) The trial court found, supported by substantial evidence: (1) that defendant in reliance on its contract with plaintiff had entered into a contract with intervener to supply him with all of the asphalt which could be produced from

plaintiff's wells; and (2) that on April 7, 1947, plaintiff breached its contract with defendant, and by reason thereof defendant breached its contract with intervener to his damage in the sum of $48,181.14.

The trial court found that the contract between defendant and intervener was not conditional, but intervener had contracted to purchase from defendant "all of the asphalt that" defendant "could produce from oil produced from" plaintiff's wells during the year 1947.

(b) There was no impossibility of performance of the contract such as is contemplated by sections 454, 457, 460 and 288, Restatement of the Law of Contracts. The rule governing the instant case is set forth in section 455, Restatement of the Law of Contracts, volume 2, as follows:

"455. Subjective Impossibility Distinguished from Objective Impossibility.

"Impossibility of performing a promise that is not due to the nature of the performance, but wholly to the inability of the individual promisor, neither prevents the formation of a contract nor discharges a duty created by a contract.

"Comment:

"a. Impossibility may be due to the nature of the thing to be done or to the capacity of the person who has promised to do it. It is the difference between 'the thing cannot be done' and 'I cannot do it.' The first is objective; the second subjective. In promises that can be complied with only by the action of the promisor himself, the two kinds are united. The subjective inability of the promisor involves also the objective impossibility of performance; the impossibility is due to the nature of the performance as well as to the inability of the promisor. The rule stated in the Section is not applicable to such a case, but only to cases where the nature of the performance is such that it can be delegated to an agent or assignee. All the following sections in the Chapter relate to objective impossibility."

California is in accord with the rule as above stated. The impossibility must consist in the nature of the thing. to be done and not in the inability of the obligor to do it. (*Potts Drug Co.* v. *Benedict,* 156 Cal. 322, 333 [104 P. 432, 25 L.R.A.N.S. 609].) If performance is not inherently impossible, and there is an unconditional promise to perform, nonperformance is a breach where the obligator becomes unable to perform even though through causes beyond his control, since he might have provided against them in his contract. (*Coul-*

*ter* v. *Sausalito Bay Water Co.*, 122 Cal.App. 480, 492 [10 P.2d 780] ; *Wilson* v. *Alcatraz Asphalt Co.*, 142 Cal. 182, 188 [75 P. 787].)

In the present case the impossibility of performance by defendant did not consist in the nature of the thing to be done, but rather in its inability to perform the contract which it had entered into. Defendant could have protected itself against damages resulting·from the facts disclosed in the present case had it provided in its contract that it should not be liable in the event plaintiff failed to deliver oil to it. Not having done so, defendant is liable for breach of its unconditional contract with intervener.

Fourth: *That damages allowed intervener are excessive.*

This proposition is untenable. 1. The following are the applicable code sections upon the measure of damage:

Section 1787, Civil Code, being section 67 Uniform Sales Act, provides in regard to damages to the buyer, as follows: " (1) Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for nondelivery.

" (2) The measure of damages is the loss directly and naturally resulting in the ordinary course of events, from the seller's breach of contract;

" (3) Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

Section 3354, Civil Code, provides as follows:

" [Buyer's Loss.]—In estimating damages, except as provided by sections three thousand three hundred and fifty-five and three thousand three hundred and fifty-six, the value of property, to a buyer or owner thereof, deprived of its possession, is deemed to be the price which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded as would suffice, with reasonable diligence for him to make such a purchase."

2. The trial court, predicated upon substantial evidence, made the following findings:

"XIII. That the price of crude oil during the year 1947 did not increase over and above the price of 51¢ per barrel, and that the price of the same during all of the year 1947 was 51¢ per barrel.

"XIV. That intervenor will between said 1st day of April, 1947, and said 1st day of January, 1948, use, need and require for the purpose of performing its contract and commitments, and for the sale and export thereof, a minimum of 16,074.89 tons of asphalt from the defendant Pacific Coast Asphalt Co., Inc.

"That it will cost intervenor during the year 1947 the sum of $59,810.60 in excess of that agreed to be paid by intervenor to said Pacific Coast Asphalt Co., Inc., less a credit to which said Pacific Coast Asphalt Co., Inc., would be entitled for and on account of the difference in transportation costs from the City of Oxnard, California to the City of Long Beach, California in the sum of $11,628.46, and that by reason thereof and of the foregoing facts intervenor will be damaged in the sum of $48,181.14.

"XXI. That it is true that the breach of its agreement on the part of the Oil Company resulted in the Asphalt Company being unable to refine and sell asphalt to the said Ralph Edgington and thereby caused the Asphalt Company to breach its agreement with the said Ralph Edgington."

From the foregoing rules of law and findings of fact it appears that the trial court properly computed the amount of damage awarded intervener.

The judgment is affirmed.

Wilson, J., concurred.

Moore, P. J., dissented.

A petition for a rehearing was denied January 9, 1950. Moore, P. J., voted for a rehearing. Appellants' petition for a hearing by the Supreme Court was denied February 16, 1950. Schauer, J., voted for a hearing.